IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY SHAFFER, ) | |
| ) | Civil Action No. 1:17-cv-330 |
| Plaintiff, ) | |
| ) | United States Magistrate Judge |
| v. ) | Cynthia Reed Eddy |
| ) | |
| WEXFORD HEALTH SOURCES, INC. ) | |
| and ERIE COUNTY DEPARTMENT OF ) | |
| CORRECTIONS d/b/a ERIE COUNTY ) | |
| PRISON, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION[1]

CYNTHIA REED EDDY, United States Magistrate Judge

I. INTRODUCTION

This civil action was commenced in December 2017 by Plaintiff Stacey Shaffer ("Plaintiff"), a Licensed Practical Nurse ("LPN"), after she was terminated from a work assignment at the Erie County Prison by her former employer, Wexford Health Sources, Inc. ("Wexford"). Plaintiff's complaint sets forth claims against Wexford and the Erie County Department of Corrections d/b/a Erie County Prison ("Erie County DOC") for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12112 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. §§955, *et seq.,* and the Family Medical Leave Act

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore, the Court has the authority to decide dispositive motions and to eventually enter final judgment. *See* 28 U.S.C. §636, *et seq.*

1

("FMLA"), 29 U.S.C. §§2601, *et seq.* This Court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. §§1331 and 1367(a).

Presently pending before the Court is a motion by Erie County DOC to dismiss the claims against it [ECF No. 4]. For the reasons that follow, this motion will be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working for Wexford as a LPN on or about May 4, 2015, at which time she was assigned by Wexford to work at the Erie County Prison ("ECP"). Compl. ¶¶10, 12-13 [ECF No. 1]. Plaintiff's assignment was made in accordance with a contract between Wexford and ECP, pursuant to which Wexford provided health care professionals to work on site at ECP. *Id.* ¶11. During the time that she worked at ECP, Plaintiff was directly supervised by Anita Brewer, a Wexford employee. *Id.* ¶¶17-18.

After suffering a seizure on June 13, 2016, Plaintiff was advised by Brewer to apply for medical leave under the FMLA. Compl. ¶¶17-19. Her leave request was subsequently approved. *Id.* ¶19. That same month (June of 2016), Plaintiff notified ECP of her condition and FMLA leave approval. *Id.* ¶20. In July 2016, Plaintiff was diagnosed with "partial symptomatic epilepsy with complex partial seizures, not intractable, without status epilepticus, seizures, and chronic intractable headache." *Id.* ¶21.

At some point on or around August 11, 2016, Plaintiff was present in the prison pharmacy with fellow nurses Ariel Palmer and Shana Mountain. Compl. ¶22. All three women were authorized to be in the pharmacy by virtue of their job positions. *Id.* ¶22(a). Nurse Palmer permitted Corrections Officer Jeremy Roberts to enter the pharmacy and, once inside, Officer Roberts spoke to Plaintiff about an inmate who was being returned to the prison from the hospital.

2

*Id.* ¶¶22(b)-(c). Plaintiff avers that she was responsible for the care of the inmate in question and therefore needed to speak to Officer Roberts about the inmate's medical needs. *Id*. ¶22(c)(i).

Approximately one week later, Plaintiff was approached by Major Gary Seymour, an employee of ECP, who directed Plaintiff into his office. Compl. ¶¶23-24. Plaintiff followed Major Seymour to his office, where Lieutenant Faith Houghten and Plaintiff's direct supervisor, Anita Brewer, were also present. *Id.* ¶¶24, 17. Once inside his office, Major Seymour stated to Plaintiff, "I need your badge and keys." *Id.* ¶25. When Plaintiff asked why, Major Seymour responded, "You had one of my officers in the med room doing God knows what," referring to the August 11 incident. *Id.* ¶¶26-27. Plaintiff remarked, "Really? Are you kidding?" *Id.* ¶28. Major Seymour then instructed Plaintiff, "Give me your badge and keys and get the hell out." *Id.* After turning in her badge and keys, Plaintiff was escorted from ECP by Lieutenant Houghten. *Id.* ¶29.

Plaintiff's loss of her badge and keys effectively meant that her security clearance at ECP was revoked. Compl. ¶30. After losing her security clearance, Wexford terminated Plaintiff on the grounds that she was incapable of performing her job. *Id.* ¶31. Ms. Palmer and Ms. Mountain were not terminated from their positions. Compl. ¶33. Officer Roberts received a five-day suspension from Erie County DOC, despite the fact that he lacked authorization to be in the prison pharmacy. *Id.* ¶34. According to Plaintiff, Wexford "chose to terminate [her] rather than reassign her to a different facility with which they allegedly have active contracts." *Id.* ¶32.

Following her discharge, Plaintiff filed a charge of employment discrimination with the EEOC. Compl. ¶4. On September 18, 2017, the EEOC issued Plaintiff a "right to sue" letter. *Id.*

Plaintiff then filed this lawsuit against Wexford and Erie County DOC on December 15, 2017. In her complaint, Plaintiff asserts claims against Erie County DOC for alleged disability discrimination in violation of the ADA and the PHRA (Counts I and II, respectively), unlawful

3

retaliation in violation of the FMLA (Count III), and unlawful interference with Plaintiff's exercise of her FMLA rights (Count IV). Plaintiff asserts identical claims against Wexford (Counts V through VIII, respectively). For relief, she requests, among other things, back wages, front pay, and an award of compensatory, punitive, and liquidated damages.

On February 15, 2018, Erie County DOC filed the pending motion [ECF No. 4] and a supporting brief [ECF No. 5]. Erie County DOC (hereafter, at times, "Moving Defendant") argues that Plaintiff has failed to allege facts that would establish a viable claim for relief and, in any event, she is not entitled to recover an award of punitive damages under the ADA. Plaintiff filed her brief in opposition to the pending motion [ECF No. 9] on March 9, 2018, and Moving Defendant subsequently filed its reply [ECF No. 13]. The relevant issues having been adequately joined, the motion is now ripe for adjudication.

### III. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id*. (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to undertake three steps when reviewing the sufficiency of a complaint. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*,

4

556 U.S. at 675) (internal alterations omitted). Next, it must identify the allegations that are no more than legal conclusions and thus "'not entitled to the assumption of truth.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). Finally, where a complaint includes well-pleaded factual allegations, the Court "'should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id*. This plausibility determination is a "'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. (quoting *Connelly*, 809 F.3d at 786–87). At the same time, however, it "does not impose a heightened pleading requirement." *Id*. Accordingly, "courts cannot inject evidentiary issues into the plausibility determination." *Id*. The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss" because a "*prima facie* case is an evidentiary standard, not a pleading requirement, . . . and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Id*. (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)) (alteration in the original).

5

## IV. DISCUSSION

### A. *Erie County DOC's Status as an Alleged "Employer"*

At the outset, the Court must address an issue that is common to the claims in Counts I through IV: namely, whether Moving Defendant was Plaintiff's "employer" within the meaning of the ADA, the PHRA, and the FMLA. There is no dispute that, to successfully state her claims, Plaintiff must allege Erie County DOC's status as a statutorily-covered "employer." *See* 42 U.S.C. §12112 (prohibiting certain discriminatory acts by a "covered entity"); *id*. §12111(2) (defining "covered entity" to include, among other things, an "employer"); 29 U.S.C. §2615(a) (prohibiting certain conduct on the part of "employer[s]"); 43 Pa. Stat. §955 (prohibiting "[u]nlawful discriminatory practices" by "employer[s]"). Here, Plaintiff is proceeding on the theory that Wexford and Erie County DOC were "joint employers" for purposes of her claims.

The United States Court of Appeals for the Third Circuit has advised, in the context of the Fair Labor Standards Act ("FLSA"), that:

> When faced with a question requiring examination of a potential joint employment relationship ... courts should consider: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig*. *("Enterprise"),* 683 F.3d 462, 469 (3d Cir. 2012). Importantly, "this list is not exhaustive, and cannot be 'blindly applied' as the sole considerations necessary to determine joint employment." *Id*. at 469-70 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469-70 (9th Cir. 1983)).

Though articulated in the context of an FLSA claim, the *Enterprise* factors have been applied to evaluate "joint employer" claims in the context of the ADA and PHRA. *See Frungillo*

*v. Bradford Reg'l Airport Operating,* No. CV 16-108, 2018 WL 1256743, at *6 (W.D. Pa. Mar. 12, 2018) (granting summary judgment on ADA claim because, "after analyzing the factors set forth in *Enterprise* and considering the totality of the circumstances of Plaintiff's employment," court found no genuine issue of material fact as to alleged joint employment relationship); *Cella v. Villanova Univ.*, No. CIV.A. 01-7181, 2003 WL 329147, at *7 (E.D. Pa. Feb. 12, 2003) (applying the same factors articulated in *Enterprise* to an ADA claim), *aff'd*, 113 F. App'x 454 (3d Cir. 2004).

Relatedly, the FMLA regulations published by the Department of Labor state that:

(a) Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA. Joint employers may be separate and distinct entities with separate owners, managers, and facilities. Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

(1) Where there is an arrangement between employers to share an employee's services or to interchange employees;

(2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,

(3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 825.106(a). For FMLA purposes, the determination of whether a joint employment relationship exists is not to be made "by the application of any single criterion, but rather the entire relationship is to be viewed in its totality. *Id.* §825.106(b). "For example, joint employment will ordinarily be found to exist when a temporary placement agency supplies employees to a second employer." *Id.*

Courts have recognized that, for practical purposes, the standards set forth in *Enterprise Rent-A-Car* and those set forth in the FMLA regulations are essentially the same. *See, e.g., Keating*

*v. Pittston City Hous. Auth.*, No. 3:17-CV-465, 2018 WL 1414459, at *3 (M.D. Pa. Mar. 21, 2018) (noting that "the regulations concerning joint employment under the FLSA are almost identical to those concerning joint employment under the FMLA," and concluding that the "*Enterprise* joint employment test [is] applicable to the FMLA) (citations omitted); *Frungillo,* 2018 WL 1256743, at *4 ("There is . . . no dispute that the 'joint employer' test under the FMLA is identical to that under the ADA, and, therefore, that the analysis applies to both sets of claims.") (citations omitted).

In this case, Plaintiff's averments establish that Defendant Wexford hired Plaintiff as an LPN, assigned her to work at ECP, directly supervised her work there, approved her medical leave under the FMLA, and ultimately terminated her employment. Compl. ¶¶10-13, 17-20, 31-32. There is no indication in the Complaint that Moving Defendant shared any of these responsibilities. Although Plaintiff alleges that Moving Defendant "is an Employer in relation to the ADA," *id.* ¶37, and "in relation to the PHRA," *id.* ¶45, the Court is obligated under federal pleading standards to disregard such conclusory allegations. *See Connelly,* 809 F.3d at 787. As for Plaintiff's well-pled factual averments, they establish Moving Defendant's control over the prison environs and its authority to determine which ECP personnel could have access to the prison pharmacy. Compl. ¶¶ 22-30. Moving Defendant also had the authority to grant or revoke security clearances and thus preclude Plaintiff's entry onto the prison grounds. *Id.* ¶¶23-30. Importantly, however, an entity's control over its own premises does not, by itself, translate into control over *the employees* that happen to work on the premises. *See Sims v. EQT Corp.,* Civil Action No. 13-1235, 2014 WL 4384593, at *5 (W.D. Pa. Sept. 4, 2014) (concluding, in the context of a Title VII claim, that "having the authority to remove an employee from the property is not the equivalent of terminating their employment; nor does it evidence the necessary control over the employee to establish joint employer status"); *Mendez v. Puerto Rican Int'l Cos., Inc.*, Civ. No. 05-174, 2013 WL 5529755,

8

at *7 (D.V.I. Oct. 7, 2013) ("[T]his Court departs from any implication . . . that the mere fact that [the putative employer] could remove personnel from its refinery in certain circumstances would be sufficient to establish joint employer status.").

Apart from the foregoing, Plaintiff offers no allegations addressing the Moving Defendant's authority (if any) to promulgate work rules and assignments or to set Plaintiff's conditions of employment (such as compensation, benefits, work schedules, or rate/method of payment). Further, no facts have been stated concerning Moving Defendant's authority (if any) relative to daily supervision over, or discipline of, Wexford employees. Additionally, there is no information in the complaint bearing on Moving Defendant's control (if any) over the payroll, insurance, or tax records of Wexford employees. The foregoing factors are not necessarily exhaustive or definitive for purposes of establishing joint employer status, *Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d at 469, 29 C.F.R. § 825.106(b), but in the absence of some additional factual content, Plaintiff cannot plausibly establish Moving Defendant's status as a "joint employer."[2]

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). At this juncture, the Court cannot definitively say that further amendment would be futile in terms of establishing Moving Defendant's status as a

---

[2] Although Plaintiff has attempted to supplement her "joint employer" theory with certain representations in her brief, it is well established that a plaintiff may not amend her claims in this fashion. *See, e.g., Sokol v. Brent Clark*, M.D., P.C., No. CV 16-1477, 2018 WL 658925, at *2 (W.D. Pa. Feb. 1, 2018) ("The assertions in Plaintiff's brief do not constitute allegations or an amendment."); *Swope v. City of Pittsburgh*, 90 F.Supp.3d 400, 413 n.8 (W.D. Pa. 2014) (noting that the plaintiff's assertions were not included in his complaint, "which cannot be amended in a brief in opposition to a motion to dismiss"); *Trunzo v. Citi Mortg.*, 43 F.Supp.3d 517, 521 (W.D. Pa. 2014) ("Plaintiffs cannot, in effect, amend their Amended Complaint via their Brief in Opposition") (internal quotations omitted).

"joint employer" under the ADA, PHRA, or FMLA.[3] Accordingly, the Court will address Moving Defendant's other arguments to determine whether a dispositive basis for dismissal exists.

### B. Plaintiff's Claims Predicated on Disability Discrimination

Counts I and II of the Complaint set forth claims under the ADA and PHRA, respectively, for disability-related discrimination. To meet her *prima facie* burden under these statutes, Plaintiff must establish that (1) she is "disabled" within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (3) she was subjected to an adverse employment decision as a result of discrimination. *Sulima v. Tobyhanna Army Depot,* 602 F.3d 177, 185 (3d Cir. 2010) (citation omitted).[4]

Moving Defendant argues that the Complaint is defective because it contains only boilerplate allegations to support Plaintiffs' ADA and PHRA claims. Although the Complaint does utilize some boilerplate language in Counts I and II, it also incorporates other factual

---

[3] Plaintiff states that, because she lacks access to the employment arrangement between Moving Defendant and Wexford, discovery will be required in order for her to establish a joint employer relationship. Pl.'s Br. Opp. at 7-8 [ECF No. 9]. Some of these difficulties may be alleviated, however, by the fact that, under Third Circuit pleading standards, "pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir.2002)) (alterations and ellipsis in the original).

[4] Disability discrimination claims under the PHRA are analyzed according to the same legal standards that apply to ADA claims. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (noting that Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts). For the sake of simplicity, the Court will refer only to Plaintiff's ADA claim in its analysis, but with the implicit understanding that the Court's resolution of the ADA claim applies equally to the PHRA claim.

averments into those claims by way of reference. *See* Compl. ¶¶ 35, 43. The factual averments in Paragraphs 1 through 34 provide content sufficient to establish a plausible "disability" in the form of Plaintiff's epileptic condition. *See id.* ¶¶ 14, 19, 21, 39, 47. In addition, Complaint Paragraphs 10, 13, 18, 38, and 46 sufficiently allege Plaintiff's qualification for the job in question, notwithstanding Moving Defendant's assertion to the contrary. It is also clear from the Complaint that Plaintiff suffered an adverse employment action insofar as she lost her security clearance from ECP and was therefore ineligible to work there. *Id.* ¶¶ 28-33. Plaintiff has adequately alleged that these adverse events were the result of disability-related discrimination, inasmuch as she claims that other non-disabled, but similarly-situated, employees were treated more favorably. *Id.* ¶¶ 22-34, 41, and 49. Although Moving Defendant contends that Officer Roberts is not a suitable comparator, the Complaint also refers to two non-disabled nurses who *are* plausible comparators.

Moving Defendant also argues that the ADA and PHRA claims must be dismissed because Plaintiff's own averments show that the basis for her termination was her own misconduct rather than a disability. This argument is unpersuasive. Plaintiff alleges that she lost her security clearance, while another non-disabled, and arguably more culpable nurse did not; this fact, if accepted as true, arguably states a plausible basis for inferring that the "misconduct" in question was a pretext for unlawful discrimination. At this procedural juncture, Plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly,* 809 F.3d at 789. In this Court's estimation, she has done so. Accordingly, apart from Plaintiff's failure to adequately plead Erie County DOC's "joint employer" status, the claims in Counts I and II of the Complaint are sufficiently pled.

*C. Plaintiff's FMLA "Interference" Claim*

The FMLA prohibits an employer from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any right provided by the Act. 29 U.S.C. § 2615(a)(1). In Counts III and IV of the Complaint, respectively, Plaintiff claims that Erie County DOC retaliated against her and interfered with the exercise of her FLMA rights.

Addressing these claims in reverse order, the Court concludes that dismissal of Count IV is appropriate. To prevail on an FMLA interference claim, a plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014). Here, Plaintiff has not alleged that Moving Defendant (or Wexford, for that matter) denied her benefits to which she was entitled under the FMLA. On the contrary, she alleges that she requested, and was granted, FMLA leave. Compl. ¶¶14-19. It thus appears from Plaintiff's allegations that she lost her security clearance -- and ultimately, her job – only *after* taking a brief medical leave and returning to work; Plaintiff does not allege that Moving Defendant prevented her in some way from taking a *prospective* leave of absence. *See Sarnowski v. Air Brooke Limousine, Inc.,* 510 F.3d 398, 401 (3d Cir. 2007) ("In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits.") (citation omitted).

Because Plaintiff appears to be complaining of actions on the part of Moving Defendant that occurred *after* she exercised her FMLA rights, the "interference" claim in Count IV is more accurately construed as an FMLA retaliation claim, which makes it redundant to Count III. As such, dismissal of Count IV is appropriate. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*

(*"Lichtenstein II"*), 598 F. App'x 109, 114 (3d Cir. 2015) (holding that district court properly dismissed FMLA interference claim where plaintiff "[did] not claim that any benefits were actually withheld, thereby making her claim distinctly *not* one for interference; district court properly found that claim was "'in form *and* substance . . . a claim for retaliation'") (emphasis and ellipsis in the original)(quoting district court decision); *Ross v. Gilhuly*, 755 F.3d 185, 192 (3d Cir. 2014) ("[F]or an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld.") (citing *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir.2005)). Moving Defendants' Rule 12(b)(6) motion will be granted as to Count IV.

*D. Plaintiff's FMLA "Retaliation" Claim*

Count III of the Complaint asserts a claim of unlawful retaliation in violation of the FMLA. Erie County DOC seeks dismissal of this claim on the basis that it played no part in the administration of Plaintiff's FMLA leave and, in any event, Plaintiff was terminated solely on the basis of her own misconduct.

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.* ("*Lichtenstein I*"), 691 F.3d 294, 301-02 (3d Cir. 2012). For purposes of establishing the third element, "[t]he requisite causal connection can be established by (1) temporal proximity between the protected activity and the adverse employment action, (2) circumstantial evidence of a 'pattern of antagonism' following the protected conduct, or (3) where the proffered evidence, looked at as a whole, suffices to raise the inference." *Innella v. Lenape Valley Found.*, 152 F. Supp. 3d 445, 458 (E.D. Pa. 2015) (quoting *Kachmar v. Sungard Data Sys.*, 109 F.3d 173,

177 (3d Cir. 1997)). "[A]n employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Lichtenstein I*, 691 F.3d at 301.

Here, Plaintiff claims that she notified Erie County DOC of her FMLA-approved leave in June 2016 and that Major Seymore revoked her security clearance two months later. Plaintiff states that Major Seymore revoked her security clearance and ordered her off the prison grounds while leaving intact the security clearances of two otherwise similarly-situated nurses who had *not* exercised FMLA rights. Plaintiff further claims that one of these otherwise similarly-situated nurses was the individual who had actually been responsible for the security breach in question. In this Court's view, Plaintiff has alleged facts sufficient to give rise to a plausible inference that the revocation of her security clearance was causally related to her invocation of rights under the FMLA.

For the reasons discussed, however, Plaintiff has failed to plausibly allege Moving Defendant's status as an "employer" subject to liability under the FMLA. In light of this deficiency, Moving Defendant's motion will be granted as to Count III.

*E. Plaintiff's Request for Punitive Damages*

Finally, Defendants argue that there is no basis for assessing punitive damages under any of the statutes at issue in this case. Plaintiff acknowledges that, as a matter of law, she cannot obtain an award of punitive damages under the PHRA or the FMLA. *See Cagliardo v. Connaught Labs., Inc.,* 311 F.3d 565, 570 n.3 (3d Cir. 2002) (observing that punitive damages are not available under the PHRA); *Thomas v. St. Mary Med. Ctr.,* 22 F. Supp. 3d 459, 476 (E.D. Pa. 2014) (recognizing that punitive damages are not recoverable under the FMLA). Accordingly, the only possible basis for an award of punitive damages is Plaintiff's ADA claim in Count I.

Given the deficiency in the Complaint relative to Plaintiff's ADA discrimination claim, the Court need not presently evaluate her request for punitive damages. The Court will deny this aspect of Moving Defendant's motion as moot, but the denial will be without prejudice to Defendant's right to reassert its objection, if appropriate, upon Plaintiff's filing of an amended complaint.

## V.  CONCLUSION

Based on the foregoing, the motion to dismiss filed by Erie County DOC will be granted as to Counts I through IV of the Complaint. The motion will be denied as moot insofar as it relates to Plaintiff's request for punitive damages. Count IV of the Complaint will be dismissed with prejudice. The remainder of Plaintiff's claims against Erie County DOC will be dismissed without prejudice to Plaintiff's right to file an amended pleading on or before July 26, 2018.

An appropriate Order follows.

By the Court,

Dated: July 12, 2018

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge


cc:   All counsel of record
      via CM/ECF electronic filing